Jones, J.
This cause was heard upon respondent’s demurrer to a petition in mandamus filed by relator
in this court. The petition recites that, on February 12, 1930, while in the course of his employment, the relator sustained an injury to his right eye; that he filed a claim for compensation for disability resulting from said injury, which the respondent recognized, and for which it paid the sum of $843.75 for temporary total disability to December 31, 1930. On October 15, 1931, relator filed, an application for modification of the award and asked for further compensation for disability resulting from his injury. The petition alleges that as a result of the injury the condition of the eye became such that it was necessary to enucleate *215 it, and on February 18, 1932, tbe eye was removed. On September 17, 1932, the respondent made an order awarding compensation to tbe relator from October 1, 1931, to March 15, 1932, on a temporary total basis, and also awarded further compensation “for 25% loss of vision of tbe right eye based upon tbe average weekly wage at tbe time of tbe injury.” Pursuant to that order tbe respondent paid tbe relator temporary total compensation for tbe period named, and a further sum of $468.75, “being compensation for twenty-five weeks at $18.75 per week, for 25% loss of vision of tbe right eye.’-’
In bis petition tbe relator claims compensation for one hundred weeks for tbe loss of bis eye, resulting from tbe removal of bis eyeball, as provided by Section 1465-80, General Code. He alleges that since tbe date of said last-named order be has made demand upon respondent for compensation for said one hundred weeks, but that tbe respondent has refused to pay tbe same. Whereupon be prays for a writ of mandamus commanding tbe respondent to pay bim compensation for tbe period of one hundred weeks for tbe loss of bis eye. Tbe relief which the relator seeks is predicated upon tbe following provisions of Section 1465-80, General Code (110 Ohio Laws, 225), which was then in force:
“ * * In cases included in' tbe following schedule, tbe disability in each case shall be deemed to continue for tbe period specified and tbe compensation so paid for such injury shall be as specified herein: * * * For tbe loss of an eye, 66 2/3% of tbe average weekly wages during one hundred weeks. For tbe permanent partial loss of sight of an eye, 66 2/3% of tbe average weekly wages for such portion of one hundred weeks as tbe commission may, in each case determine, based upon the percentage of vision actually lost as a result of tbe casualty, but in'no case shall *216 an award of compensation be made for less than a 25% loss of vision * *
It is indicated in the pleading, and apparently conceded in argument, that at the time of injury the claimant had only partial sight, which the commission found to be 25 per cent, vision; and for the loss of that 25 per cent, it awarded twenty-five weeks compensation. It refused to pay any further compensation to the relator for the removal of his eye; for which removal relator claims he should be awarded two-thirds of his average weekly wages for the period of one hundred weeks.
The question here is one of interpretation, and falls
within narrow limits. The Attorney General contends that when the statute provided compensation “for the loss of an eye,” the phrase comprehended merely a loss of vision, and not loss of the physical organ; that it was not the legislative intent, in case of the removal of an eyeball, to pay as much to one who had lost but 25 per cent, vision as to one who may have lost perfect vision. With this view we cannot agree. In the section of the statute specified the Legislature seems to have dealt with two classes: (a) Those who had lost an eye, and (b) those who had lost partial sight of an eye. Had the Legislature intended to confine the compensation simply to those who had lost vision, it would have done so, and would not have provided, as it did, for compensation “for the loss of an eye.” Evidently the Legislature had this distinction in mind when in the spring of 1931 it amended the section in controversy by providing compensation, not “for the loss of an eye,” but “for the loss of the sight of an eye.” 114 Ohio Laws, 36. However, it was clearly the legislative intent not to provide compensation in cases such as this for both the loss of an eye and for the loss of vision of the same eye. The history of this case discloses that the claimant made application for loss of vision before the removal of his eye; but when *217 the commission finally awarded him compensation the eye had been removed. Had the commission’s attention been called to that fact at the time of the award by an amendment of relator’s application, it would have become the duty of the commission, under the circumstances detailed, to have awarded the workman compensation for the loss of his eye, and not for the loss of his vision.- In view of that existing situation the relator was entitled to the full statutory compensation for one-hundred weeks for the loss sustained by the removal of his right eye; that amount of compensation should now be awarded him, less the $468.75 paid him for the loss of vision.
The demurrer to the petition is overruled, and the respondent not desiring to plead further, a writ of mandamus will issue with the modification as herein indicated.

Writ allowed.

Weygandt, C. J., Allen, Stephenson, Matthias and Bevis, JJ., concur.
Zimmerman, J., not participating.